FILED
CLERK

3:05 pm, Oct 26, 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LORI DeCOSTANZO,                    *      Case No. 20-CV-02284(GRB)
 *on behalf of herself and*         *
 *others similarly situated*,       *
                                    *
                 Plaintiffs,        *      Long Island Federal
                                    *       Courthouse
                                    *      814 Federal Plaza
        v.                          *      Central Islip, NY  11222
                                    *
GLAXO SMITH KLINE, PLC,             *      October 21, 2020
                                    *
                 Defendant.         *
                                    *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *

        TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
             BEFORE THE HONORABLE GARY R. BROWN
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:              AARON SIRI, ESQ.
                                ELIZABETH BREHM, ESQ.
                                Siri & Glimstad LLP
                                200 Park Avenue
                                17th Floor
                                New York, NY 10166


For the Defendants:             J. GORDON COONEY , JR, ESQ.
                                NATALIE GEORGES, ESQ.
                                PETER NAGER, ESQ.
                                Morgan, Lewis & Bockius LLP
                                1701 Market Street
                                Philadelphia, PA 19103



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

(Proceedings commenced at 2:00 p.m.)

THE CLERK:  Calling case civil 2020-2284, DeCostanzo vs. Glaxo Smith Kline, plc.

Counsel, please state your appearance for the record. Plaintiff goes first.

(No response.)

THE COURT:  Counsel, can you state your appearances?

(No response.)

MR. SIRI:  Your Honor, I'm so sorry. I was making my appearance and my phone was on mute. I apologize.  This Aaron Siri --

THE COURT:  I'll tell you counsel, we're having so many technical issues I had no idea if I was disconnected or whatever.  So anyway go ahead, please.

MR. SIRI:  My apologies.  Aaron Siri on behalf of the plaintiffs, along with Elizabeth Brehm from my first who's also here on behalf of the plaintiffs as well.  Thank you.  I apologize for that.

THE COURT:  All right.

MR. COONEY:  Your Honor, on behalf of the two defendants, Gordon Cooney, Peter Nager and Natalie Georges, from Morgan Lewis and Bockius.

THE COURT:  Excellent.  Anyone else?

(No response.)

THE COURT:  Good.  All right.  We'll proceed.  We're

1    here for a pre-motion conference.  I've reviewed the

2    submissions of the parties appearing here today. I would also

3    just remind counsel that I reserve the right to construe the

4    letters and the arguments of counsel and the motion itself.

5         We are operating under very difficult conditions as

6    evidence by the fact -- and I don't know if this will be

7    reflected on the record, but we had trouble getting started

8    today and this is only an audio call.  But we're still working

9    under pandemic conditions and people are doing the best they

10   can.

11        So I find that it's often in the interest of everyone

12   to see if we can sort of reduce these motions.  Please remember

13   everyone has a right to make any motion they want.  I also

14   reserve the right to just construe the motion is being made in

15   the interest of serving Rule 1 which requires, among other

16   things, efficiency and fairness.

17        So with that said let me go to defendant's counsel. I

18   have a few specific questions. If you'd like to speak generally

19   to the motions you can, but I have some specific questions if

20   you'd like me to go that way.

21        MR. COONEY:  Your Honor, it's Gordon Cooney.  I'm

22   happy to proceed in whatever way you prefer.

23        I think as Your Honor can see from the letter there

24   are three kind of principal overarching issues that cut across

25   the complaint. I'd be happy to kind of highlight a few of those

1        things, but I'm happy to proceed in whatever way Your Honor

2        thinks is most efficient.

3              THE COURT:  Well, okay.  So yes, there are three --

4        thank you for doing that and we are in agreement that there are

5        three principal grounds and I've got to talk about the

6        miscellaneous grounds in a few minutes.

7              But let me start with the principal ground.  So

8        personal jurisdiction over GSK plc.

9              MR. COONEY:  Yes, Your Honor.

10             THE COURT:  That the complaint alleges that GSK,

11       which is defined as GSK plc and its affiliates, did all of

12       these things.  At this stage am I in a position to even

13       seriously consider dismissal, or is this something that's

14       better held off till a time at which the factual

15       (indiscernible)?

16             MR. COONEY:  Your Honor, I think -- I'd like to

17       address the substance of it but let's just deal with the

18       procedural issues first.

19             I think it is often the case that the complaint

20       alleges that the defendant who is named is the actor involved

21       in the case.

22             There are not sufficient or specific jurisdictional

23       facts plead in the complaint and I think the Second Circuit in

24       a number of cases, Your Honor -- I would point to the *Jazini*

25       *vs. Nissan* case, and the plaintiff has a burden and a personal

1    jurisdiction motion to come forward with a prima facie case of

2    personal jurisdiction with specific facts, not just making the

3    allegations that the defendant did the conduct involved.

4            And I think if you think about the way in which

5    personal jurisdiction has evolved recently in the Supreme

6    Court, of course, we have two concepts.

7            We have first the concept of general jurisdiction,

8    and the Supreme Court has held very squarely that general

9    jurisdiction exists only where the defendant is at home.  And

10   at home is defined by the Supreme Court as being the place of

11   incorporation or the principal place of business of the

12   defendant.

13           And here I think it's undisputed that Glaxo Smith

14   Kline plc is incorporated under the laws of England and Wales

15   and has its principal place of business in the UK.  And so

16   there is no question of general personal jurisdiction.

17           As to specific jurisdiction the question then becomes

18   as to whether the plaintiffs have pointed to any specific facts

19   that the particular plaintiff's claims arise from with regard

20   to contact by the defendant and the forum.

21           And so you have to look at the particular plaintiff's

22   claims and see if the plaintiff has pointed to any specific

23   contacts.

24           And what the plaintiffs point to here, Your Honor,

25   are two things.  One, they say GSK's publicly traded securities

1    are listed on the New York Stock Exchange.

2           Well, number one, that's not enough for general

3    jurisdiction because as the Supreme Court has said, and as I

4    mentioned, general jurisdiction only exists where the defendant

5    has its place of incorporation or its principal place of

6    business.  And simply having another presence is insufficient.

7           And with regard to specific jurisdiction, of course,

8    the claims here do not have anything to do with the issuance or

9    trading of securities.  So that's not enough for specific

10   jurisdiction.

11          The most the plaintiffs point to here, Your Honor, is

12   some references on a website, the About Whooping Cough website,

13   that plaintiff does not say she ever saw, that she does not say

14   she relied on in deciding to get vaccinated in this case, and

15   in which if we submitted the declarations in support of the

16   motion to dismiss, the declarations would show that that

17   website didn't even exist until after plaintiff's vaccination

18   in this case.  So that --

19          THE COURT:  Let me stop you right there.  So you

20   raise a very interesting point and it's secular to the peculiar

21   procedure that I've brought onto you here, which is to say

22   look, you wrote a three-page letter and should I decide it at

23   this point or should we decide it later?

24          What you're telling me is that as a 12(b)(1) motion,

25   rather than a 12(b)(6), I can consider matters outside the

1    complaint and you would submit things that say -- from GSK plc

2    that say things to the effect of we never leave Wales or

3    something akin to that.

4          So the question I could ask you is -- and I could go

5    to your adversary on this, is should your adversary get some

6    discovery on that issue before I can decide it or not?

7          MR. COONEY:  Your Honor, here's where I think -- I do

8    agree that on a personal jurisdiction motion, as opposed to a

9    motion to dismiss for failure to state a claim, you can and

10   indeed, because of the way the complaints always read, often

11   you will have to go to materials outside the complaint to get

12   there.

13         And I think there is a threshold that the Second

14   Circuit has articulated for whether or not discovery is

15   appropriate. I think you can look at, as I said, the *Jazini*

16   case, 148 F.3d 181.

17         I also think there's a very helpful case from the

18   Southern District, *In re Terrorist Attacks* at 349 F.Supp 2d

19   765, that says that this can't be just a fishing expedition and

20   there to be a real prima facie showing on the part of the

21   plaintiff to get to discovery in the face of jurisdictional

22   declarations, particularly because of the purpose of personal

23   jurisdiction.

24         THE COURT:  Okay.  Bear in mind, of course, counsel,

25   that you have two clients and this effects -- if I'm

1   understanding it correctly, only one and in the course of

2   discovery, which tends to be broad, you know, other things can

3   come out.

4           So if, in fact, your clients you know leave Wales and

5   attend trade shows in New York City where they push handcarts

6   down the street and sell vaccines or whatever.  I'm being

7   facetious, of course, but you get the idea, it's all going to

8   come out in the end. So I guess my question is the game worth

9   the candle?

10          MR. COONEY:  I think it is, Your Honor. I mean this

11  is an issue of principle for plc because it is a holding

12  company and it doesn't conduct operations in the U.S.  When the

13  original complaint was filed it named only plc.

14          And so we immediately called up plaintiff's counsel

15  and said plc is a holding company.  It's really not involved

16  here.  The right company is the U.S. affiliate, GSK LLC.  We

17  think the right thing to do is to dismiss the UK holding

18  company and name.  Here's the right entity to sue.

19          So we were very up front with plaintiff's counsel and

20  unfortunately plaintiff's counsel said well, no, we're not

21  going to dismiss plc, but we are going to add the LLC.

22          And so we think as a matter of policy and principal

23  that the UK holding company is at home in the UK.  It does not

24  get involved in the advertising, or marketing, or distribution,

25  or sales or promotion of Boostrix and products in the U.S. and

1    the right defendant here is the LLC.

2           We brought that to plaintiff's attention and that's -

3    - we have arguments as why the claims against LLC ought to be

4    dismissed.  But we do think it is very important as a matter of

5    principle.

6           THE COURT:  I'm going to ask you to stop right there

7    and I'm going to go to your adversary on this one issue first.

8           So, I'm sorry. Who's speaking for plaintiff today?

9           MR. SIRI:  Aaron Siri, Your Honor.

10          THE COURT:  All right.  Sir, so let me ask you this.

11   You heard the discussion we just had and I'll ask you the same

12   question.  Is the game worth the candle?  I mean, if you tell

13   me you already the evidence and you put it in the complaint,

14   then we've got a different story.

15          At the end of the day, since you have another

16   corporation involved in the case as a defendant does it matter?

17   Do you want to spend a lot of resources on this question, I

18   guess is the question.

19          MR. SIRI:  Yes, well, with regard -- well, I'm start

20   at the end.  I mean, with regard to whether or not we want to

21   spend resources on it, defendant's counsel did reach out, as he

22   indicated and advised, that he believes the correct entity is

23   the LLC entity, not the plc entity.

24          And what we advised defense counsel at that time was

25   -- we said look, there's two issues.  One is the crux of the

1    complaint here is a false advertising, that there is a campaign

2    that was launched by GSK regarding their product that was

3    intended to create a level of fear regarding pertussis and to

4    persuade folks to get GSK's product.

5         That campaign that they -- they bought, they created,

6    they chose to put advertisements on TV and on the internet.  It

7    lives in the form of a website and a commercial.

8         When we went and looked at that website and

9    commercial, the only identifiable entity that we could find was

10   GSK plc.  There is a link, as we allege in our complaint.  This

11   is all in the complaint.

12        As we allege in the complaint there's  a link on the

13   page for the website which also includes the commercial on the

14   website that is entitled interest based ads.  And it explicitly

15   defines what GSK means as used in all of their (indiscernible)

16   ads and all of their advertising. And it says GSK plc and

17   affiliates.

18        And so we knew that at the least is GSK plc, you

19   know, is the entity that is -- when all of these ads use the

20   term GSK it means GSK plc and it might mean other entities, but

21   at the least it means GSK plc.

22        I've asked defense counsel to provide additional

23   explanation as to why their actual advertising material says

24   it's GSK plc and the only explanation is that well, you know,

25   it says and its affiliates.  Well, that's right.  It says and

1    its affiliates.  It doesn't say or its affiliates maybe would

2    have give them (indiscernible) but -- so that is the only

3    answer that -- hence it's the only entity that we sued when we

4    brought the action.

5         Had we been able to identify the LLC entity as

6    connected to this advertisement, we certainly would have sued

7    them.

8         Second point is that we also asked for an

9    understanding of the financial position situation of this LLC

10   entity.  And it's a class action.

11        Obviously, we have duties on behalf of the punitive

12   class and we want to make sure that the LLC entity, which they

13   are very insistent on wanting to be the only defendants here,

14   have the financial resources to pay.

15        You know, one of the things we found was that

16   recently this entity LLC had to pay hundreds of millions of

17   dollars in damages because regulators found improper conduct

18   regarding one of the products.

19        I don't know what financial state that has left that

20   entity in. I have asked for visibility from defense counsel as

21   to the financial state of that entity, and we have not gotten,

22   you know, the visibility that we think would permit us to make

23   an appropriate decision to say well, you know, what, this LLC

24   has so much money that we don't have to worry about it.  You

25   can drop plc.

1              THE COURT:  Okay.

2              MR. SIRI:  I think it would be imprudent and it

3       certainly would be a problem --

4              THE COURT:  Counsel, I get it.

5              MR. SIRI:  Yeah.  Can I make two more points, Your

6       Honor, very quickly to respond?

7              THE COURT:  No. No. Not unless you want to snatch

8       defeat from the jaws of victory.  I'm good.  I think you're

9       entitled to discovery on this point. So I'm denying the motion

10      without prejudice (indiscernible) renewal at a later point

11      after there's discovery.

12             I find that the allegation that the plc entity, if I

13      have that right, was sufficiently involved in this and on the

14      website which -- and there can be arguments. And I'm not

15      foreclosing this forever, but I believe the plaintiff at a

16      minimum is entitled to discovery at this early phase.

17             MR. COONEY:  Your Honor, can I just make --

18             THE COURT:  You make seven points, counsel, but you

19      know, we are where we are.

20             MR. COONEY:  Your Honor, if I could just make one

21      point on this and that is the website that they're referring to

22      all it says is references to GSK, we, us and are, are

23      references to Glaxo Smith Kline plc and it's affiliates.

24      That's all it says.

25             More importantly, the website didn't even exist when

1    the plaintiff was vaccinated.  The plaintiff's claims can't

2    arise in this case from the website.  The plaintiff only points

3    to the commercial, the TV ad.  There is nothing in the TV ad

4    that refers to plc.  There's nothing in the complaint that says

5    --

6         THE COURT:  Here's where you and I are in violent

7    agreement.  This is the sort of thing that should be worked out

8    among counsel.  It's plaintiff's job to cast a wide net.  It's

9    defendant's job to try to narrow that net but you say to me you

10   reach out and try to work it out. I understand.  That's great.

11        On the other hand, counsel represents to me that they

12   want to make sure that the affiliate has the financial

13   wherewithal to withstand the judgment.  It's probably work you

14   don't want to engage in right now and I understand that.

15        So right now I'm leaving the plc entity in.  You

16   might prove to me to complete conclusion at some point that plc

17   has not place in the case, and at that point I'll dismiss it,

18   but they have a right to look further, at least until we can

19   figure out (indiscernible).

20        MR. COONEY:  Your Honor, the one other thing I would

21   say is we did provide plaintiff with significant information

22   also the financial heft and magnitude of LLC.  We heard nothing

23   about some large judgment or any concern about that.

24        I would hope that a minimum the discovery that would

25   be directed again plc at this point would be on the

1   jurisdictional issue.  We'll respond on behalf of LLC with

2   regard to any merits discovery, if we get past the 12(b)(6)

3   point.  But obviously the purpose of personal jurisdiction is

4   to avoid burden on a defendant who is not properly before the

5   court.

6           And so I would hope that at least discovery would be

7   jurisdictional discovery and it would be tailored, as the

8   Second Circuit has suggested in the cases that I've talked

9   about.

10          THE COURT:  I understand. I'm not limiting today.

11  But if it gets to be burdensome, you will let me know and

12  you'll let the magistrate judge and we'll see what we can do.

13  All right.  So we'll take it from there.

14          Let's go onto your next point.  Please, what is the

15  next argument you would like to talk about?

16          MR. COONEY:  So, Your Honor, the next argument really

17  has to do with the doctrine of preemption and primary

18  jurisdiction and plaintiff's claims of injury.

19          From the face of the original amended complaints,

20  Your Honor, it appeared that the plaintiff was making a claim

21  for physical injury.

22          What the plaintiff asserted in the claim was that her

23  vaccine caused her to develop a "defective form of immunity"

24  and that according to plaintiff what that meant was that she

25  would get vaccinated.  She could contract pertussis, not

1     develop any symptoms but be in a position to unknowingly

2     transmit that pertussis to others.  That was the allegation of

3     the complaint.

4           Any such claims for that kind of injury are preempted

5     by the Federal Vaccine Act that we identified in the --

6           THE COURT:  Wait, wait.  Hold on, hold on.  I thought

7     -- your suggestion to me was that the Vaccine Act preempted

8     claims for physical injury.  Yeah?

9           MR. COONEY:  They preempt claims for physical injury

10     and that probably also includes emotional injury, Your Honor.

11     So physical injury is -- the definition in the act is broad. I

12     would agree it doesn't include economic injury.

13           THE COURT:  So I think it is a --

14           MR. COONEY:  It is a broad definition.

15           THE COURT:  Unless I'm misreading it I think

16     plaintiff has conceded that there's no physical, or I would go

17     as far as to say apparently emotional injury, that it's only

18     economic.  If that's the case, then this argument goes away,

19     yes?

20           MR. COONEY:  I would agree that if there is no claim

21     for real emotional injury and there is no claim for physical

22     injury that the Vaccine Act would not preempt or require the

23     plaintiff to present that claim.

24           I will note that it is -- there is nothing that would

25     have prevented plaintiff from seeking compensation under the

1    Act and we believe that given the claims that had been asserted

2    that was the appropriate step.

3           But where does that leave us?  It leaves us with two

4    things to discuss.  One is whether there is a legally

5    cognizable injury, Your Honor, and it also leaves us in a

6    discussion about the doctrine of primary jurisdiction with

7    regard to the remaining --

8           THE COURT:  Well, let's go back to that in a second.

9    Let me just confirm with plaintiff's counsel -- I just want to

10   make sure I'm misreading it.  Plaintiff's counsel, is it fair

11   to say at this point we have no -- from the plaintiff no claim

12   for physical or emotional injury.  Am I right about that?

13          MR. SIRI:  Yes.  We don't have any claim for personal

14   injury in our complaint.

15          THE COURT:  As well -- right.  And that would include

16   physical and emotional, yes?

17          MR. SIRI:  Right. Our claims are for consumer fraud,

18   warrantee of fraud, unjust enrichment and negligent

19   misrepresentation.

20          THE COURT:  Okay.  And just forgive me. I thought I

21   came across this, but your client was -- got this through an

22   insurance -- it was a co-pay. I mean, is there actual dollars

23   out of the pockets that we can identify at this point?

24          MR. SIRI:  What we alleged in the complaint is that

25   the clients pay for the product directly or indirectly.  We

1   allege that a few times contrary to what the defendants put in

2   their letter.

3          We believe that there wasn't a co-pay, that it was

4   covered by insurance.  And so there would have been an indirect

5   payment for the product by the plaintiff.

6          THE COURT:  Interesting.  Okay.  Great.

7          Back to defendant's counsel.  So I want to make it

8   clear on the record that there is no claim for physical and

9   emotional injuries, as counsel just concedes.

10         So believe that the preemption under the National

11  Childhood Vaccine Act argument, or failure to exhaust, goes

12  away.  Fair?

13         MR. COONEY:  I think that's fair, Your Honor, based

14  on that understanding.

15         THE COURT:  Look, we're making progress.

16         MR. COONEY:  I agree.

17         THE COURT:  You should feel good about that.

18         MR. COONEY:  I do, Your Honor.

19         THE COURT:  So now you want to tell me about the FDA

20  primary jurisdiction -- CDC primary jurisdiction issue, yeah?

21         MR. COONEY:  I mean, maybe while we're just in the

22  area of talking about injury, I think what that leaves, Your

23  Honor, is that there is no claim for direct economic loss here,

24  Your Honor.  The plaintiff is not out of pocket and I think

25  that's now clear.

1          And what the plaintiff's economic claim is is that

2     she needed to travel to her local pharmacy and we cite cases in

3     our letter that that is not legal injury under New York law and

4     she's made --

5          THE COURT:  Well, hold on.  Hold on.  Back up a

6     second.

7          Wouldn't the payment of the insurance premiums count

8     or no?

9          MR. COONEY:  I don't think so, Your Honor.  There's

10    no suggestion and there's no basis to say that there was any

11    change in her premiums.  That she paid any more or was affected

12    in any way in terms of her premiums as a result of the insurer

13    reimbursing for pertussis.  And, in fact, the insurers often

14    encourage this kind of behavior because it keeps down costs.

15    That's often why there is no co-pay.

16          So there is no basis in this complaint and based on

17    what we've heard to conclude that there's any economic injury

18    that the plaintiff has incurred in this case.

19          THE COURT:  Okay.  Let me think about that a little.

20          But you don't -- do you have cases specific to that

21    issue that they sort of -- incidental economic harm is not

22    sufficient to sustain the action?

23          MR. COONEY:  We certainly cited a case, Your Honor,

24    that cases -- that claims of inconvenience like travel to get

25    the product or whatever are not legal injury. I think we cited

1    one such case in our letter.

2              If the court would like some additional supplemental

3    briefing on that issue, we'd be happy to do it.  But there is

4    no basis to conclude that this plaintiff has suffered any

5    economic injury at all as a result of her vaccination with

6    Boostrix.

7              THE COURT:  So then assuming every allegation in the

8    complaint is true what you're telling me then is it's the

9    insurer that has to come as a plaintiff, yeah?

10             MR. COONEY:  If there is a claim for economic injury,

11   it would to the insurer.  And, of course, the insurer would

12   have to conclude independently that -- whether or not it agrees

13   with the public policy that this particular plaintiff is

14   articulating, which seems to be more of a anti-vaccination

15   public policy. The insurer might well disagree with that, as

16   does CDC.  So --

17             MR. SIRI:  I don't believe that plaintiff is bringing

18   a case to try and stop anybody from getting vaccine.  I don't

19   think there's anything anti-vaccine about it.

20             I believe the claim is very clear, the defendants

21   here lied to the public that getting this vaccine will prevent

22   the person who gets it from becoming infected and transmitting

23   pertussis.

24             And, in fact, the reality is what this product does

25   is it does reduce the symptoms of pertussis.  It does stop you

1    from getting the disease, but it renders you still capable of

2    becoming infected with pertussis and transmitting it.

3          And so when they were running a national TV campaign

4    depicting grandmas and plaintiff as wolves with sharp teeth,

5    reflecting in the eyes of little babies to make these parents,

6    these grandparents fear that if they don't get plaintiff's

7    product they are endangering -- they are apparently like wolves

8    who are going to I guess injure their grandkids and other

9    children.

10          They created that fear to sell their product and they

11    won awards, as we alleged in our complaint, for that

12    advertising campaign because it did increase sales of their

13    product.

14          But the reality turned out that actually that product

15    rendered them more likely to transmit pertussis to their

16    grandkids and other children because while it reduced symptoms,

17    it didn't prevent infections and transmission.

18          I don't know what about that is anti -- that's a

19    straight claim of lying to the public.  And, you know --

20          THE COURT:  So to summarize -- to summarize, counsel,

21    you're saying you're not against vaccines. You're just against

22    vaccines that don't work.  Is that the allegation?

23          MR. SIRI:  I think we're attorneys alleging that

24    defendants have lied about the -- how this product works.  That

25    it reduces symptoms so those who receive the product so that

1    they won't get pertussis disease, that there's a product that

2    does that and apparently it is theirs.  But it doesn't do the

3    rest.

4            In terms of -- the point is that I don't believe -- I

5    think that that was just intended as a slight.  That's not

6    representative of -- they're trying to deflect from the fact

7    that their clients basically lied to the public about what this

8    product will do.  And in fact --

9            THE COURT:  Okay.  Counsel, while I have you -- hold

10   on.  Hold on.  Because since you've volunteered to help, I get

11   to ask more questions.

12           How do you articulate a loss in this case?

13           MR. SIRI:  How do I articulate a what?  I'm sorry.

14           THE COURT:  A loss, an economic loss.

15           MR. SIRI:  Well, there is the indirect economics.

16   The plaintiff does have to pay for insurance, as Your Honor

17   pointed out, as obviously insurance then pays for the product.

18           Separately the entire purpose of this advertising

19   campaign that they engaged in in New York and across the

20   country was to create fear that by not getting their product

21   they could be a danger to children.

22           THE COURT:  Well, but that doesn't (indiscernible).

23           MR. SIRI:  There are cases that support not economic

24   loss, but there are cases that support that damages can be

25   supported by increasing fear.

1          And here, in fact, that's what's happened which is

2     upon learning how this product -- what this product actually

3     does that, in fact, it rendered those who received it more

4     likely to transmit pertussis to grandkids and children because

5     while it reduced the person who its symptoms, they could still

6     transmit it, meaning they won't even know they're sick when

7     they're infected and transmitting pertussis.

8          And so it only has now served by getting

9     (indiscernible) to increase the very fear that their

10    advertising created, and that is a harm that is recognized as a

11    basis of damages as well.

12         THE COURT:  All right.  Okay.  Let me go back to

13    plaintiff's counsel.

14         MR. COONEY:  Your Honor --

15         THE COURT:  Go ahead.

16         MR. COONEY:  -- if I could address each of those

17    things.  So first --

18         THE COURT:  Actually, you don't need to.  Hold on.

19    Hold on.  You don't need to because I'm (indiscernible) on

20    that. It's too much to shoot from the hip on that.

21         MR. COONEY:  Understood.

22         THE COURT:  Let's go back to the primary jurisdiction

23    CDC, FDA issue.

24         MR. COONEY:  Okay.  So, Your Honor, I think the key

25    thing to remember here as part of the primary jurisdiction

1    point is we have an FDA approved Tdap vaccine and it's also

2    undisputed, Your Honor, that the Centers for Disease Control

3    specifically encourage the public to get the vaccine, including

4    to protect from adults transmitting to infants.

5            The crux of the plan's allegation here is that GSK's

6    advertisement for Boostrix should have stated the exact

7    opposite.

8            Plaintiff's claims -- all of plaintiff's claims are

9    premised upon the contention that GSK should have said to those

10   public that Boostrix creates a defective form of immunity and

11   GSK should have said that it does not protect from transmitting

12   pertussis from adults to children when CDC says the exact

13   opposite. Its guidance to the public is get the vaccine and it

14   helps to transmit -- or to prevent the transmission of

15   pertussis from adults to children.

16           And the plaintiffs rely on some cherry picked

17   allegations from three studies that make their claim, but

18   putting that aside this case directly implicates both the FDA

19   approval but more importantly CDC's expertise around what is in

20   the best interest of public health.

21           Your Honor, these claims threaten the consistency of

22   message from CDC concerning the efficacy of Tdap vaccines and

23   these issues, the issues about what the public messaging should

24   be, GSK's public messaging about these vaccines was completely

25   in congruence with what CDC was saying.

1          And what the plaintiffs are saying is we should have

2     affirmatively (indiscernible) something that's completely

3     contrary to the Center for Disease Control's guidance.  And

4     those issues -- this issue, consistency of guidance from CDC, I

5     think we see lots of challenges associated with when there are

6     different mixed messages out there.

7          The question of what message should be given to the

8     public regarding the efficacy of these Tdap vaccines ought to

9     be resolved by CDC, not by a jury under state law.  And

10    particularly with a plaintiff who had suffered no injury and if

11    they had an injury could have brought it in front of the no-

12    fault program.

13         And so these issues -- I do think there is a big of a

14    relationship between the injury and the primary jurisdiction

15    doctrine.  We have a plaintiff here with no injury.  And the

16    crux of the complaint is at odds with CDC guidance.

17              MR. SIRI:  May I respond?

18              THE COURT:  Please.

19              MR. SIRI:  Thank you.  Well, first is the argument

20    that we -- the plaintiff is stating that GSK's advertisement

21    should have informed the public that their product doesn't work

22    to prevent infections (indiscernible) is a straw man argument.

23    Nowhere in the complaint nor is that the argument that

24    plaintiff's making.  We're not arguing that they should have

25    said anything.

1          The argument that plaintiff is making is that the

2     defendants should have done nothing.  They could have chosen to

3     not run their advertising campaign.  They didn't need to go to

4     the public and tell them that their product doesn't work right.

5     They could have sat on their hands and done nothing.

6          They chose affirmatively to create an advertising

7     campaign, put it on American television sets, target New

8     Yorkers, put an entire website up around that campaign to

9     provide the ability to find thousands of providers in New York

10    where you can their Boostrix products, and like I said won

11    awards for that campaign for how effective it was. That was

12    their --

13         THE COURT:  So I'm what I'm confused about counsel

14    today is I'm presuming that there was FDA approval to

15    distribute this product, yeah?

16         MR. SIRI:  There was FDA approval.  But we're not

17    challenging --

18         THE COURT:  So hold on. Hold on.  Stop, stop, stop.

19         MR. SIRI:  I was getting to that. I was getting to

20    that.

21         THE COURT:  Is there a suggestion that defendants

22    knew something that the FDA didn't?  In other words, what --

23    where's the disconnect that said it really doesn't fall within

24    the area of administrative competence that (indiscernible) talk

25    about.

1              MR. SIRI:  Absolutely, Your Honor

2         So this lawsuit -- and we cited case law for this.

3    This lawsuit in no way challenges the FDA's licensure of this

4    product or the CDC's recommendations regarding this product.

5    There's nothing in this lawsuit that would prevent the FDA from

6    continuing the licensure or the CDC to continue to recommend

7    the product.  Nothing at all.  We're not challenging the

8    licensure.

9         The one case that defendants cite to support their

10   position, *Doe v. Merck*, was an -- the HHS, the Department of

11   Health and Human Services, which is the parent department to

12   the FDA, was a defendant and the plaintiff there was seeking to

13   actually have Merck's licensure for a different vaccine

14   cancelled by the FDA.  That's okay.  In that situation, sure

15   preemption makes sense.

16        But in this case we're not challenging anything with

17   regards to the FDA's licensure or the CDC's recommendations

18   regarding these products.  We are simply challenging the

19   defendant's choice to create and run a false advertising

20   campaign.

21        Incidentally, and I don't think this matters,

22   frankly, but incidentally the licensure of the product relates

23   to preventing disease, meaning preventing symptoms. This

24   product by all accounts does to that. It prevents disease.

25        THE COURT:  Okay.  So you're saying that it construed

1        the nature of the approval.  Fair?

2                MR. SIRI:  Well, the --if you pull up the package

3        insert for the Boostrix product it has an indicated use.  The

4        indicated use doesn't include preventing infection and

5        transmission. It's about preventing pertussis and disease.

6        But, again, I don't think that that's relevant because we're

7        not challenging in any -- even if they did include that, which

8        it doesn't, we're not challenging that, the FDA's licensure or

9        any of that.

10               The other thing I'll point out is that the defendant

11       here throws out the plaintiffs put some cherry picked studies

12       in their complaint.  These are not cherry picked studies, one

13       of those by the FDA itself.

14               Another one has co-authored that are GSK consultants

15       and is probably the seminal study on this issue published just

16       last year.  To call them cherry picked studies is a little

17       rich. I'm sorry, Your Honor --

18               THE COURT:  You know what, counsel, let me just stop

19       you there.

20               Counsel, I have a feeling that this case is going to

21       go on for a long time.  And I don't (indiscernible) attack back

22       and forth. I don't care.  It doesn't affect me.  It just wastes

23       time.  So just get to the points that you want to cover.

24               MR. SIRI:  I'll make a last substantive point and

25       it's this.  With regards to any claims about what the CDC or

1     FDA say about this product are outside of the four corners of

2     the complaint as well, and I don't think are appropriate to the

3     motion to dismiss at this time.

4                    THE COURT:  Okay.

5                    MR. COONEY:  Your Honor, if I could just make four

6     points.  If I can just make four points.

7                    THE COURT:  Sure.

8                    MR. COONEY:  First, I think it's clear that on a

9     primary jurisdiction motion it is entirely appropriate for the

10    court to look outside the face of the complaint.

11                   Second, what the plaintiffs say is misleading about

12    the ads. And it's clear from the complaint is that GSK failed

13    to disclose what plaintiff's claim, it is that Boostrix is not

14    effective and that GSK should have specifically said -- that's

15    the claim, GSK should have specifically said that it's not

16    effective in transmitting -- at preventing the transmission of

17    pertussis from adults to children.  Both of those things are

18    completely contrary to the CDC guidance.

19                   Third point, FDA's approval of a vaccine and a

20    medicine constitutes a finding as to both efficacy and safety

21    and then finally when you look at the injury, if this sort of

22    case where a plaintiff had suffered a real and meaningful

23    injury and the court is trying to weigh the value of proceeding

24    in court against the risks associated with interfering with

25    agency expertise, we've got a plaintiff we who think has no

1    legal injury.

2              THE COURT:  But I don't think that matters.

3              MR. COONEY:  And against that. --

4              THE COURT:  Counsel.  Counsel, counsel, counsel, hold

5    on. I don't think that matters.

6              In other words, if the plaintiff has no legal injury,

7    then the case may get dismissed on that ground.  If the

8    plaintiff -- if the only injury alleged is the needle prick

9    from the shot or whatever it is, or was something horrendous

10   the legal analysis is the same.  Right?  Either it's within the

11   FDA's jurisdiction or it's not unless I'm missing some part of

12   this test.

13             MR. COONEY:  No, I don't disagree with Your Honor. I

14   do agree that -- I think the lack of legal injury issue is

15   dispositive of the whole case.

16             The point I'm simply making is that this case

17   presents a significant risk in terms of interfering with CDC's

18   guidance because at its heart, although it's about advertising,

19   what the plaintiff says is wrong about the ads is that we

20   didn't say that which is inconsistent with CDC's guidance.  And

21   that is the kind of question that needs to be resolved by

22   (indiscernible).

23             THE COURT:  But isn't that the point then. Isn't that

24   sort of the interesting aspect of this?  In other words, if

25   they're not attacking the approval (indiscernible) but saying

1    that you advertised this for what I think is called in other

2    circumstances an off label use, right? You know, it's approved

3    because you know, if you get this, you actually won't cough

4    when you get the whopping cough but you'll still have whooping

5    cough.

6            And then you take a -- you know, print ad that says

7    guess what?  Use our vaccine and you won't get whooping cough.

8    That's a difference, right?  Isn't that (indiscernible).

9            MR. COONEY:  I don't think the off label analogy is

10   appropriate here though, Your Honor, because here unlike an off

11   label case where you don't have a governmental entity saying

12   use this product for X, right?  In an off label case the

13   approved indication is A and you don't have the government

14   saying use the product for X.

15           Here you have CDC telling people we want people to go

16   out and get his vaccine. So the CDC wants to encourage people

17   to get the vaccine.  That's consistent with the concept of a

18   manufacturer advertising.

19           And the only thing that the plaintiff says is

20   misleading about the ads is the failure to disclose that which

21   CDC says the exactly opposite.  That it's efficacious.  That

22   the CDC wants people to get the vaccine and that it's a good

23   idea for adults to get the vaccine to try to minimize the

24   transmission of the disease to children.

25           So what's I think fundamentally different from some

1    of the other preemption cases and the off label cases is you

2    don't have a governmental entity actually encouraging the

3    message.

4          And that's where there's I think a very significant

5    distinction between this case and what CDC is saying, and the

6    complete alignment of the advertising with CDC and the complete

7    disconnect between what plaintiffs say we should have said and

8    what CDC wants as the public message.

9          MR. SIRI:  Your Honor, I think it's misleading to say

10   that what we're trying to say is they should have sent a

11   certain message.  Plaintiff's position is that they shouldn't

12   have made a false messaging.

13         To that point, since defendant is talking about facts

14   outside of the complaint they have I think in line with

15   understanding that they shouldn't make false -- you know, those

16   kinds of false statements, have taken of the entire big bad

17   wolf commercial and advertisements from their website now.

18         And I think that that's reflective of our point,

19   which is not that they should affirmatively state it doesn't

20   work, but they shouldn't be affirmatively stating it does do

21   certain things that it doesn't, as reflected by the fact they

22   appear to now no longer make those statements on the big, bad

23   cough website.

24         The other thing, and this other point, and it's

25   really relevant, which is the FDA and CDC didn't provide

1    approval for these ads.  These aren't like a package insert

2    that are approved by the FDA.

3            These are advertisements that the GSK made of their

4    own accord that they chose to play to consumers around the

5    country.  These are not ads that are approved by federal health

6    agencies and there's no -- again, nothing in this lawsuit is

7    seeking to disrupt the licensure of these products or the CDC's

8    recommendations for these products.

9            THE COURT:  Okay. I think I have what I need on that

10   point.

11           I think that leaves us then with what I'll call the

12   bucket point, which means the bucket of additional state law

13   grounds for dismissal.

14           Let me start with defendant's counsel. Do you think

15   that given the limitations that I've given you in terms of a

16   three-page letter and so forth that you've had adequate room to

17   sort of flesh those out, because I'm not sure that you do.

18           MR. COONEY:  Yeah, I don't know that we have, Your

19   Honor.  And I think we obviously prioritized the issues that we

20   think are overarching and I continue to think that the no

21   injury and primary jurisdiction arguments are dispositive.  And

22   it may be that the no injury argument alone is dispositive

23   here.

24           You know, the bucket for arguments I think are

25   important.  They would shape the contours of the case. If the

1    case were to proceed, it would be helpful to know what claims

2    are in or not in for purposes of class certification and I

3    think a class would be very difficult here given the injury

4    claims.

5            But I do think it would be helpful to perhaps devote

6    a little attention to those arguments, in addition to the no

7    injury point that you've asked for some further briefing on.

8            THE COURT:  Plaintiff's counsel, are you on board

9    with that?

10        (No response.)

11           THE COURT:  I'm sorry.  Maybe I -- do you guys think

12   -- plaintiff's counsel, do you agree?

13           MR. SIRI:  I'm sorry. I did again. I'm so sorry. I'm

14   talking to myself. I apologize.

15           THE COURT:  I'm sure you made a great point. I'm

16   sorry I missed it.

17           MR. SIRI:  Well, I wish I could say I did. I really

18   didn't.  I just said -- if I'm on board with -- I apologize.

19   You mean, a briefing schedule for the defendant's motion to

20   dismiss?

21           THE COURT:  Yeah, for the miscellaneous grounds to

22   dismiss, yeah?

23           MR. SIRI:  Sure.  Whatever Your Honor will find most

24   helpful.

25           THE COURT:  No, I'm just saying I don't think there's

1      -- it was hard for me to sort of flesh out all of them because

2      there was this kind of one paragraph devoted to a bunch of

3      arguments.  So I thought perhaps you wanted to go into a little

4      more detail on --

5              MR. SIRI:  Sure.  When you say briefing, Your Honor,

6      do you mean like doing a fulsome motion to -- fulsome briefing.

7      Not additional letter --

8              THE COURT:  A brief devoted to those matters that I

9      can't decide today, yeah?

10             MR. SIRI:  Sure.  Yes.

11             THE COURT:  You sound troubled or confused and I

12     don't want to (indiscernible) at that.

13             What I'm (indiscernible) – there's an implication of

14     a bunch of other grounds but I don't really know what they are.

15     We can go through this process again and I can you both

16     (indiscernible) letters on those but I think since I'm going to

17     have you submit a brief anyway maybe I should just have you

18     cover all the state law grounds and the other issues that you

19     want to (indiscernible).  Makes sense?

20             MR. SIRI:  Makes sense.

21             MR. COONEY:  Yes, Your Honor.

22             THE COURT:  Okay.  Good all right.

23             In that case I am ready to wrap this up.  So let me

24     start off by saying counsel has done a fine job under very

25     difficult circumstances and we're doing our best but I think

1    we've got some good work done today.

2         So what I will start off by saying is -- so as set

3    forth in Rule 2(e)(1) of my individual rules, the court

4    reserves the discretion to construe the premotion letters,

5    along with counsel's argument, as the motion itself.  As noted

6    in that rule, the procedure's been upheld by the Second

7    Circuit.

8         Under appropriate circumstances I find the exercise

9    of such discretion is rendered more appropriate by the

10   existence of the individual rule, which effectively puts

11   counsel on notice of this possibility, as well as the fact that

12   we are still in the throws of a pandemic, which makes things

13   difficult.

14        In any event, to the extent that these are 12(b)(6)

15   motions, and more on that in a second, the motion decided under

16   the well established standard review for Rule 12 motions, as

17   discussed in numerous cases, and I won't burden the record with

18   all of that.  But suffice it to say I'm incorporating by

19   reference the standards for 12(b)(1) and 12(b)(6)

20   determinations.

21        But under 12(b)(6), at least the court is

22   (indiscernible) to decide, assuming the allegations to be true

23   for the purposes of the motion, whether there are sufficient

24   facts to determine (indiscernible) on its face.

25        So based on a review of the complaint and after

1    considering the arguments of counsel, which were well done, I

2    am going to grant some of the motions in part and deal with

3    others in different ways as follows.

4            On the question of personal jurisdiction over GSK

5    plc, I find that the allegation of the involvement in the

6    website and so forth is sufficient at this very early juncture

7    to establish -- to deny the motion for dismissal on the grounds

8    of personal jurisdiction and, of course, will leave that open

9    as facts proceed -- factual discovery to proceed at some point.

10   You may look at that again.

11           But at this point I think it's sufficient for

12   plaintiffs to proceed, at least to get more information about

13   the various -- the corporate structure.

14           Concerning plaintiff's claims being barred by the FDA

15   CDC's primary jurisdiction question, I recognize the defendant

16   properly cites to Second Circuit cases finding that reliance on

17   the doctrine of primary jurisdiction is appropriate whenever

18   enforcement of the claim requires resolutions of issues which

19   under regulatory scheme have been placed within the special

20   competence and administrative body, citing of course *Doe v.*

21   *Merck and Company*, (indiscernible) 559.  But that was a very

22   different situation.  That was a challenge to the FDA's grant

23   of a license.

24           Here I believe, based on my reading of the complaint

25   and the discussion with counsel, this is a false advertising

1    claim.  And false advertising claims can and have been

2    (indiscernible) and CDC's primary jurisdiction over safety and

3    efficacy matters.

4            And I will cite here *Jovel v. i-Health, Inc*., which

5    is 2013 Westlaw 5437065, which is an EDNY case from 2013 which

6    states in fields traditionally occupied by the state such as

7    health and safety regulations, there's a strong presumption

8    against federal preemption claims that a defendant

9    misrepresented the effectiveness of its product and it's

10   traditional claim of misrepresentation, not an attempt to

11   enforce the FDCA's labeling requirement.

12           Federal law constitutes only a floor upon which the

13   states can build additional protections.  The FDCA and state

14   law consumer protection statutes serve complimentary, though

15   somewhat overlapping roles.

16           The FDCA is not focused on the truth or false

17   advertising claims, but it's directed to protecting the public

18   by ensuring that the drugs sold in the marketplace are

19   effective and not misbranded.  And that's a quote from *Jovel*.

20           And on the same grounds I find in this case, at least

21   again at this juncture, the primary jurisdiction question is

22   not dispositive.

23           (Indiscernible) goes to the damages portion of this

24   case.  The issue of the so called defective immunity claim

25   being preempted by the National Childhood Vaccine Injury Act

1    and the failure to exhaust administrative remedies, I'm denying

2    that motion because -- or denying it as moot is the plaintiff

3    now concedes that she is not claiming any physical or emotional

4    injury. So that disposes of that motion.

5          However, that raises a very interesting question as

6    to what exactly the damages are.  And I'm going to direct a

7    briefing schedule and I want the plaintiffs and the defendant

8    to brief that question for me because it I think it's a serious

9    question here, particularly in a case, we we've identified,

10    that the economic injury is attenuated by the payment by an

11    insurance company, if indeed that is the situation here.

12          So I'll need the parties to brief that, as well as an

13    additional state law grounds for dismissal because there was a

14    kitchen sink aspect to these letters where apparently there

15    were lots more grounds and the parties want to argue about the

16    state law claims. And I'm going to direct that that be briefed

17    as well.

18          With that in mind let me ask defendant's counsel how

19    long do you need to prepare and serve such a (indiscernible).

20          MR. COONEY:  We can do that in two weeks Your Honor.

21          THE COURT:  Two weeks.  I like that.  Ambitious.

22    Good.  Let me go to -- plaintiff's counsel, what do you say?

23    How long to respond?

24          MR. SIRI:  I don't know. He's making me look bad for

25    what I had in mind. I would respectfully ask for four weeks,

1   Your Honor.

2          THE COURT:  How about I'll give you both three weeks.

3   So I'll give defense counsel three weeks to submit and

4   plaintiff's counsel three weeks to respond and then defendant's

5   counsel, I assume you want some sort of reply?

6          MR. COONEY:  Yes, Your Honor.  Please.

7          THE COURT:  And you want three months for that.

8   That's a joke.  That's a joke.

9          MR. COONEY:  We could do it a week after we get

10  plaintiff's brief, Your Honor.

11         MR. SIRI:  I thought he was going to take two days,

12  Your Honor.

13         THE COURT:  Well, either way.  It's three weeks,

14  three weeks, and one week.  So in about seven weeks.

15         At that point, because if we use the bundling rule

16  here defendant's counsel will file the entire bundled brief

17  motions as such.

18         I think I covered everything, but (indiscernible) a

19  lot in this complicated case and I might have missed something.

20  Is there anything else you need me to address?

21         MR. COONEY:  Can I ask a question, Your Honor, and

22  that is on the kind of jurisdictional discovery, jurisdictional

23  issues and recognizing that that might become moot depending on

24  your resolution of the damages question, we have a conference

25  with the magistrate judge next week.

1          Would you want us to focus on trying to work out the

2     jurisdictional discovery issues at that time or how would Your

3     Honor like us to proceed in that regard.

4          THE COURT:  Okay. Who is the magistrate judge, by the

5     way?

6          MR. COONEY:  Magistrate Judge Shields, I believe.

7          THE COURT:  Oh, you are so very lucky. I mean, I was

8     a magistrate judge with her for many years and she's so much

9     better than I was. I mean, she's great.  So you're going to

10    have a great experience with that.

11         So I think it makes sense to prioritize that, but I'm

12    going to leave that to her good discretion.  All right?  So

13    I'll let you lay that out for her and she -- because sometimes

14    (indiscernible). Sometimes it's not a big deal.  If you're

15    going a deposition and it's two more questions, who cares.  So

16    let's see how that goes.  All right.

17         MR. COONEY:  Thank you, Your Honor.

18         THE COURT:  And what I want to say on that, and I

19    know counsel raised the issue about not serving a party who

20    might not be subject to personal jurisdiction, again, based on

21    what I have today I don't see a reason to grant that motion.

22    So I'm not with you on that score, but here's the thing.  We're

23    open for business.

24         Judge Shields and I are here in the courthouse

25    literally today and almost every day.  So, you know, to the

1  extent something is difficult and you can't work it out, we're

2  here. So we can deal with it on a sort of go forward basis.

3  All right?

4          MR. COONEY:  Yes, Your Honor.  Thank you.

5          THE COURT:  Okay.  Anything else?

6          MR. SIRI:  Nothing from plaintiff.

7          THE COURT:  Not hearing anything, I will conclude for

8  today. I'll just say counsel, again, you did a great job.

9  Thank you for that.  Stay well, wear a mask, wash your hands

10  and we'll talk again.  All right?

11          MR. COONEY:  Thank you, Your Honor.

12          MR. SIRI:  Thank you, Your Honor.

13          THE COURT:  Okay.  We are adjourned.

14          (Proceedings concluded at 3:00 p.m.)

15

16          I, CHRISTINE FIORE, court-approved transcriber and

17  certified electronic reporter and transcriber, certify that the

18  foregoing is a correct transcript from the official electronic

19  sound recording of the proceedings in the above-entitled

20  matter.

21

22  *Christine Fiore*

23  _____          October 25, 2020

24      Christine Fiore, CERT

25