**FILED
CLERK**

1:36 pm, Nov 12, 2020

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
-------------------------------------
LORI DECOSTANZO,                    |   Docket 2:20-cv-02284-GRB-AYS
                         Plaintiff, |
                                    |   United States Courthouse
              v.                    |   Central Islip, New York
                                    |
GLAXOSMITHKLINE PLC,                |   October 27, 2020
                         Defendant. |   10:35 am - 10:50 am
-------------------------------------

                    TRANSCRIPT FOR CIVIL CAUSE
                       - INITIAL CONFERENCE -
                  BEFORE THE HONORABLE ANNE Y. SHIELDS
                    UNITED STATES MAGISTRATE-JUDGE

A P P E A R A N C E S :

 For Plaintiff:           ELIZABETH ANN BREHM, ESQ.
                          SONAL JAIN, ESQ.
                          Siri & Glimstad LLP
                          200 Park Avenue, 17th Floor
                          New York, New York 10166
                          (212) 532-1091; (646) 417-5967 fax

 For Defendant:           PETER C. NEGER, ESQ.
                          Morgan Lewis & Bokius LLP
                          101 Park Avenue
                          New York, New York 10178
                          (212) 309-6000; (212) 309-6001 fax

 for Defendant:           J. GORDON COONEY, JR., ESQ.
                          NATALIE GEORGES, ESQ.
                          Morgan Lewis & Bokius LLP
                          1701 Market Street
                          Philadelphia, Pennsylvania 19103
                          (215) 963-5000; (215) 963-5001 fax

 Transcriber:             AA EXPRESS TRANSCRIPTS
                          195 Willoughby Avenue, Suite 1514
                          Brooklyn, New York 11205
                          (888) 456-9716
                          aaexpress@court-transcripts.net

      (Proceedings recorded by electronic sound recording)
```

1  COURTROOM DEPUTY: Calling 20-cv-02284, *DeCostanzo v.*
2  *GlaxoSmithKline plc.* Please state your appearances for the
3  record.
4  MS. BREHM: Good morning, Your Honor. This is
5  Elizabeth Brehm, on behalf of the plaintiff. Along with Sonal
6  Jain, another attorney at my firm.
7  THE COURT: Good morning.
8  MS. BREHM: Good morning.
9  MR. COONEY: Good morning, Your Honor. It's Gordon
10  Cooney from Morgan Lewis. Along with Peter Neger and Natalie
11  Georges, on behalf of the GSK defendants.
12  THE COURT: Good morning. So, can we just have one
13  lawyer talking for each side? So, for the plaintiff, would that
14  be Ms. Brehm?
15  MS. BREHM: Yes, it will be.
16  THE COURT: And Mr. Cooney for the defendant?
17  MR. COONEY: Yes, Your Honor.
18  THE COURT: Okay. Very good. All right. So, this a
19  conference in this case. I know that you were before Judge
20  Brown, and I know that he dealt with some issues. And I believe
21  you are currently briefing a motion to dismiss. And since that
22  will be the defendant's motion, let me hear from you a little
23  bit about what you're briefing, what the issues are, and where
24  the case stands.
25  MR. COONEY: Sure, Your Honor. Thank you. So, in

1  this case, Your Honor, Ms. DeCostanzo alleges that she was
2  vaccinated with Boostrix, which is an FDA approved combination
3  of Tetanus, Diphtheria and Acellular Pertussis or Tdap vaccine.
4  Her claim is that the GSK defendants failed to warn that
5  Boostrix provided an allegedly defective form of immunity and
6  that GSK specifically should have warned that Boostrix is
7  ineffective in preventing the transmission of Pertussis to
8  infants.  We say that the allegations contradict the FDA
9  approval for the drug, and longstanding CDC guidance that every
10 adult, and especially those around infants, receive a Tdap
11 vaccine.
12         Now, one of the issues that Judge Brown wants to
13 specifically hear about, Your Honor, concerns whether there's
14 any legal injury in this case.  And Judge Brown described that
15 issue at page 38 of the transcript as serious.  And that's
16 because Ms. DeCostanzo does not allege that she became infected
17 with any disease, does not allege that she transmitted Pertussis
18 to anyone, doesn't assert a claim for physical injury or
19 emotional distress, and doesn't even allege that she paid for
20 the vaccine.  At most, she claims that her insurer may have paid
21 for the vaccine and that she had to travel to her local pharmacy
22 to get the vaccine.
23         And so, one of the potentially dispositive issues that
24 Judge Brown wants full briefing on concerns whether plaintiff
25 has asserted a viable claim for a legal injury such that all her

1  claims should be dismissed. As I noted, he described the issue
2  as a serious issue in the pre-motion conference, and he has set
3  a briefing schedule on this issue, as well as some other issues
4  that will have briefing complete on December 9.
5     In addition, Your Honor, we had raised a
6  jurisdictional motion as to one of the defendants,
7  GlaxoSmithKline plc. We believe that the company that engaged
8  in the conduct at issue is the U.S. operating company, GSK LLC.
9  GlaxoSmithKline plc is a holding company that has its place of
10 incorporation in the U.K., and its principal place of business
11 in the U.K. Judge Brown did say that he thought the plaintiff
12 was entitled to jurisdictional discovery before he could
13 conclude that there was no jurisdiction over GSK plc. And in
14 fact, the plaintiff served a request for production of documents
15 ostensibly related to jurisdictional issues last week. And so,
16 that's effectively where we are, Your Honor. And if Your Honor
17 has any questions, I'm happy to answer them.
18     THE COURT: Okay. Thanks. So, let me go to the last
19 issue you spoke of first. And that's the personal jurisdiction
20 over the GSK plc. Now, I know that in this case, as the
21 defendant, you just basically say, you got the wrong party. But
22 you haven't been able to work that out, and Judge Brown said
23 you're entitled to discovery. I noticed you used the word
24 "ostensibly" when you referred to the plaintiff's request for
25 information. Are you taking a position that what you had is

1  inappropriate discovery?  Because from my reading of what Judge
2  Brown said is that you're, at the very least, going to go
3  forward with discovery with respect to personal jurisdiction
4  over GSK plc.  So, is that discovery ongoing?  And are you
5  getting along with respect to that discovery?
6              MR. COONEY:  So, Your Honor, the plaintiff served late
7  last week on either Thursday or Friday their requests for
8  jurisdictional discovery.  Literally, we received them last
9  Friday or late last week, and haven't had a chance to talk to
10 the client in depth about them.  We will certainly produce or
11 respond that information that has been requested is responsive
12 and work out the production of that information to plaintiff.
13 Having said that, we think that a number of their requests are
14 over broad.  We think it's premature to get into that since we
15 literally received it for the first time last week.  But I think
16 a fair response would be to say that some of what has been
17 requested is appropriate, and some is over broad, and we would
18 hope to work that out with the plaintiffs through the normal
19 process under the federal rules and the meet and confer process.
20             THE COURT:  All right.  I'm not going to get
21 prematurely involved in that, certainly.  I will just say, with
22 respect to what Judge Brown said, there is certainly discovery
23 on the jurisdictional issue.  Now, we can move onto whether or
24 not we should have any other discovery as part of tier one in
25 this case, and you do have a motion to dismiss on this injury

1  issue.
2              Is the plaintiff, and I'm going to maybe get ahead of
3  myself here, but is the plaintiff going to argue that you need
4  to take discovery on the issue of damages?  What are the
5  plaintiff's damages here?
6              MS. BREHM:  Good morning, Your Honor, Elizabeth Brehm.
7  If I my, I would just like to correct a couple of things for the
8  record.  So, GSK manufactures and does sell this product that
9  the defendants just explained called Boostrix.  This is a
10 product that they sell millions of dollars' worth each year.
11             THE COURT:  I understand what your allegations are.
12 Let's talk about damages.  And it sounds like it's a false
13 advertising case.  Right?
14             MS. BEHM:  That's right.  And that's one of the things
15 I just wanted to state is that the defendants are saying that
16 we're alleging a failure to warn, and that they should have
17 actively said or made certain disclosures regarding that
18 product. That is certainly not our allegation.  Our allegations
19 are false advertising, and that they actively chose to engage in
20 a campaign where false statements were made.  It is not that we
21 are obligating them with a duty to effectively say anything or
22 not about their product.  Just that when they say something --
23             THE COURT:  So, your federal cause of action is
24 Magnuson-Moss Warranty Act, right?  It's not a Lading Act case,
25 right?

1     MS. BREHM:  That is right.  That is right.
2     THE COURT:  Okay.  So, under that warranty act, what
3  are the elements there?
4     MS. BREHM:  I'm sorry.  For just the Magnum --
5     THE COURT:  Magnuson-Moss Warranty Act.  That's your
6  federal cause of action.  So, what are the elements of causes of
7  action under that federal law?
8     MS. BREHM:  So, I understand that we have to --I was
9  part of that, which gets back to something that you asked about,
10 that we need to show some sort of damages there, which is the
11 issue we discussed with Judge Brown.  And this is what he wanted
12 more briefing on.  Because, as he did say, this is an issue, and
13 we will be providing more briefing on it.
14    THE COURT:  I'm going to stop you there.  The reason
15 I'm asking what the elements are under Magnuson-Moss is because
16 that's going to help me understand whether there's a good way of
17 going forward with a little bit of tier one discovery.  And I
18 guess I'm not as familiar as I hope you are with the elements of
19 a Magnuson-Moss claim.  So, that's what I'm asking.  Not about
20 injury, I'm asking about the elements.
21    MS. BREHM:  Understood.  So, this act is a federal
22 remedy that's provided for consumers who have been damaged by
23 the failure of somebody like GSK, a manufacturer who is a
24 supplier or warrantor to comply with any written or implied
25 warranty for their product.  So, Boostrix here is a consumer

1  product within the meaning of that.  And plaintiff would be a

2  consumer here.  And so, we need to, I think, establish that

3  anything that they warranted, even impliedly, would be something

4  that is false in their advertising.  So, related to their false

5  advertising.

6           THE COURT:  Okay.  So, it's an implied warranty claim,

7  right?

8           MS. BREHM:  That's right.

9           THE COURT:  Implied warranty.  It's not an express,

10 right?

11          MS. BREHM:  That's right.  And we allege that they do

12 breach a written warranty by selling the plaintiff a product

13 that, as warranted, did not do what they alleged that it would

14 do.  So, they advertise that the product is going to reduce the

15 recipient's chances of getting and then transmitting Pertussis.

16 And that does not conform to GSK's written warranty, which

17 therefore violate a warranty act.  And then, of course, causes

18 injury to plaintiff.

19          THE COURT:  Okay.  I know it's a long complaint.  Does

20 the plaintiff's complaint refer to any studies?

21          We do, Your Honor.  I'm not sure in what context you

22 mean.  We refer to peer-reviewed journal articles and studies

23 that state that the --

24          THE COURT:  I'm not sure because, to be honest, I

25 don't have it right in front of me now.

1          MS. BREHM:  Right.

2          THE COURT:  But does it refer to particular scientific

3  studies?

4          MS. BREHM:  It does.  It does, Your Honor.

5          THE COURT:  Okay.  And do both sides know what studies

6  those are?  If not, I would ask you to produce those.  But let

7  me ask the defendants.  Do you know what studies the plaintiff

8  is talking about?

9          MR. COONEY:  We do, Your Honor.

10         THE COURT:  Okay.

11         MS. BREHM:  We're happy to provide them if not, but

12 they are linked in the complaint as well.

13         THE COURT:  Now, you know what you're talking about.

14 So, let me ask the plaintiff.  In addition to any jurisdictional

15 discovery, is there some limited discovery that you would have

16 in mind that would make sense to go forward with as part of tier

17 one?

18         MS. BREHM:  Yes, I do, Your Honor.  And this is part

19 of the issue where I think that it makes sense to move forward

20 with discovery as a whole and not try to slice and dice it with

21 a jurisdictional discovery because there will be certainly some

22 overlap.  But certainly, the claim, the Magnuson-Moss Warranty

23 claim, we can likely put together some RFP's that would be

24 limited to that claim.  And again, it might overlap with some of

25 the requests that we've already served regarding the

1  jurisdictional issues.

2      THE COURT: Well, the reason I'm asking you to limit
3  it, and I understand it overlaps, but the only reason I'm asking
4  you to limit it is that I would like to see you keep down costs
5  certainly at this stage since there's a motion to dismiss. So,
6  I would like to limit it. Let me ask the defendants. Any ideas
7  on limiting it? And I know you don't want to do any discovery,
8  you'd rather not, but any ideas on limiting it?

9      MR. COONEY: Your Honor, I think that we should limit
10 the discovery at this point to the jurisdictional issues. I
11 think that it's certainly possible that what could be done in
12 the interim would be to do initial disclosures, Your Honor, and
13 any meet and conferring on things of that nature. But given the
14 fact that the briefing is going to be completed by December 9,
15 and, actually, plaintiff wanted a longer time for briefing than
16 we did, we were prepared to move the briefing along at a faster
17 rate. We think the right thing to do is, let's address the
18 jurisdictional issues of discovery that have been served, and if
19 the Court thinks it makes sense for the parties to exchange
20 initial disclosures, and perhaps at least meet and confer on a
21 discovery plan, in the event the motion to dismiss is denied, I
22 think that would be a productive way to proceed between now and
23 the time that Judge Brown decides the motion.

24     THE COURT: Okay. You know what, I do think that
25 makes sense because I think so much of this case is going to

1  come down to a lot of expert discovery, and that can run into a
2  lot dollars.  So, let's do this.  I'm going to limit discovery
3  to the jurisdictional issue about GSK plc, and, also, require
4  that the parties exchange initial disclosures.  And I would like
5  you all to have a plan ready to go as soon as Judge Brown
6  decides the motion to dismiss.  So, I think that's the most
7  efficient way to run this case.
8           MS. BREHM:  Your Honor?  Elizabeth Brehm, again.  I'm
9  sorry to interrupt.  I think it makes sense --
10          THE COURT:  I'm still speaking!  And you are
11 interrupting.  Okay?  I'm still speaking.  Don't say, sorry to
12 interrupt.  Don't interrupt yet.  I'll let you speak after what
13 I'm saying is my ruling here.
14          I'm going to limit discovery to the jurisdictional
15 issue.  I understand that this is early days.  I think you're
16 probably both in a position that once the motion to dismiss is
17 decided to professionally be able to move forward quickly.  And
18 I will require you to move forward quickly.  But right now, I
19 think probably the best way to save time, money, and to promote
20 efficiency is to just limit discovery that way.  So, plaintiff,
21 if you want to speak now, you can go ahead.
22          MS. BREHM:  Thank you, Your Honor.  You addressed what
23 I was going to say.  Thank you.
24          THE COURT:  Okay.  Very good.  All right.  Thanks very
25 much.  I'll put an order on the docket.

1  MR. COONEY:  Thank you, Your Honor.
2  MS. BREHM:  Thank you, Your Honor.
3  THE COURT:  Okay.
4                  - o0o -

```
 1                         CERTIFICATION
 2
 3           I, Rochelle V. Grant, certify that the foregoing is a
 4   correct transcript from the official electronic sound recording
 5   of the proceedings in the above-entitled matter.
 6
 7   Dated:   November 11, 2020
 8
 9                                    _____
10                                          Rochelle V. Grant
```